UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| KENNETH LERNARD MINGO, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 5:06-cv-33 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| STATE OF MICHIGAN, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| _____ | ) | |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a sentence of 51 months-to-20 years imposed by the Oakland County Circuit Court on February 4, 2004, after petitioner entered a plea of guilty to a charge of possession of more than 50 but less than 224 grams of cocaine, MICH. COMP. LAWS § 333.74012(a)(3), and a misdemeanor charge of possession of marijuana, MICH. COMP. LAWS § 333.74032(d). Petitioner unsuccessfully sought to withdraw his plea both in the trial court and in the state appellate courts. His timely habeas corpus petition sets forth a single ground for relief: that the trial court erred in refusing to allow petitioner to withdraw his plea, which was rendered involuntary by the ineffective assistance of counsel. (Petition, ¶ 12(A)).

Chief Judge Robert Holmes Bell has referred this matter to me for review of the record and the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Proceedings in the District Court. Respondent has now filed an answer to the petition, supported by the state trial and appellate records. Upon review

of the record, I conclude that petitioner has not established grounds for habeas corpus relief. I therefore recommend that the petition be denied on its merits.

**Proposed Findings of Fact**

The state-court prosecution arose from an investigation by the Novi Police Department of Douglas Stevenson for suspected trafficking in controlled substances. Officers arranged for a controlled purchase of cocaine to be made by a confidential informant from Stevenson on May 30, 2002. Stevenson and petitioner were arrested at the scene of the controlled purchase. Two ounces of cocaine were seized from Stevenson and a small quantity of marijuana from petitioner, who was driving the van in which petitioner and Stevenson arrived at the scene of the drug transaction.

Petitioner retained attorney Jeanette Williams-White, who represented him at all phases of trial proceedings, through sentencing. Petitioner appeared before the 46th District Court, accompanied by Attorney Williams-White, for a preliminary examination on July 22, 2002. (*See* Preliminary Exam (PE) Transcript, docket # 15). At the outset of the examination, counsel stipulated that the substance seized from Stevenson was analyzed as approximately 56 grams of powder cocaine. (PE 4). The prosecutor then called Officer Larry Lemerand of the Novi Police Department, who testified concerning the investigation of Stevenson and the establishment of the controlled purchase. The confidential informant, who had purchased cocaine from Stevenson on at least ten previous occasions, called Stevenson in a monitored telephone call. (PE 6-7). They agreed on the purchase of two ounces of cocaine from Stevenson for a price of $2,500.00. (PE 7). They were to meet in a parking lot at approximately 8:00 p.m. in the City of Southfield. (*Id.*). Police established

surveillance, and they observed a dark colored van in which Stevenson was identified as a passenger. (PE 8). On cross-examination, Officer Lemerand conceded that the confidential informant never identified petitioner as a supplier. The officer volunteered that Stevenson was often driven to meeting points by his suppliers, and that petitioner was driving the van that evening. (PE 9). The officer also conceded that petitioner did not deliver narcotics and that no narcotics were found on his person. (PE 10).

The prosecution then called Officer Richard Wehby of the Farmington Hills Police Department, who was assisting Officer Lemerand in the investigation. Officer Wehby was participating in the stakeout, and saw the van pull into the parking lot. (PE 15-16). He saw both men "looking around" and then saw petitioner, who was the driver, leave the vehicle and walk around to the front. (PE 17). Petitioner then opened the hood and propped it up, continuing to look around in all directions. (*Id.*). On the basis of his experience, the officer testified that petitioner was "acting as a lookout," attempting to spot the customer and any uniformed police officers who happened to be driving by. (PE 17-18). The officer identified petitioner as the driver of the vehicle. (PE 20). Stevenson, the passenger, was placed under arrest, and officers seized a brown paper bag sticking out from the top of his pants. The bag contained approximately two ounces of cocaine. (PE 20-21). On cross-examination by defense counsel, the officer reiterated the confidential informant's statement that Stevenson usually did not drive but was driven by a confederate. (PE 21-22). The officer confirmed that the confidential informant had never identified petitioner as a person who had driven Stevenson on any previous occasion and that officers had not witnessed petitioner with any narcotics. (PE 22-23).

The People then called Officer Paul Nicholas of the Farmington Hills Police Department. Officer Nicholas was part of the crew that arrested petitioner and Douglas Stevenson. (PE 28). He testified that Stevenson, after being given *Miranda* warnings, confessed to the crime. Stevenson admitted receiving a call earlier in the day from "a lady" asking to purchase two ounces of cocaine. Stevenson said that after the phone call, he contacted petitioner and requested the cocaine. Petitioner agreed to bring over the cocaine and arrived later that evening, driving the black van. Stevenson told officers that petitioner provided the two ounces of cocaine to Stevenson and that the men subsequently went to the location where they were arrested. (PE 30). On cross-examination, the officer repeated that Stevenson had named petitioner as his supplier. (PE 31).

After hearing argument from counsel, the court found probable cause to bind over both Stevenson and petitioner on the charge of possession of cocaine with intent to deliver.

The Oakland County Circuit Court docket sheet (docket # 14) shows that petitioner was released on a personal recognizance bond and appeared for arraignment in circuit court on August 1, 2002. Thereafter, defense counsel filed at least one motion, and the matter was adjourned at petitioner's request to allow a further opportunity for investigation and discovery.

Petitioner and counsel appeared before Judge Gene Schnelz of the Oakland County Circuit Court for trial on October 30, 2003. This was over one year after the circuit court arraignment. At the outset of proceedings, Judge Schnelz noted that Mr. Stevenson had entered a guilty plea the day before. The prosecutor indicated that he would be calling Stevenson as a witness against petitioner. (*See* Plea Transcript (PT) at 3, docket # 16). Counsel and the court discussed the fact that conviction required a ten-year mandatory minimum sentence, but that the court had discretion to depart downwards from the mandatory minimum for compelling reasons. (PT 3-4).

After a short bench conference, defense counsel informed the court that petitioner wished to plead guilty. (PT 4).

The court then began a plea colloquy with defendant, after placing him under oath. (PT 5). When asked whether he was satisfied with the advice of his attorney, petitioner answered, "I don't know which direction to go." (PT 6). When the court asked for clarification, petitioner said, "I'm just disturbed about the direction to go, but I guess I am satisfied." Petitioner then volunteered to the court that his counsel was "the best I've seen." (PT 6). The court then explained that "Nobody wants to force you to do anything you don't want to do," and petitioner indicated that he understood this. (PT 6).

The court then apprised petitioner of the nature of the charge and the statutory penalty of 10 years minimum, 20 years maximum. The court then informed petitioner that his counsel had requested a so-called "*Cobbs*" plea." (PT 7).[1] The court informed petitioner that its preliminary evaluation of the sentence would be to depart downwards from the 10-year mandatory minimum and to impose only a 5-year minimum sentence. "So the sentence would ultimately be 5-to-20 years." (PT 7). Petitioner indicated that he understood his right to withdraw his plea and go to trial if the court deviated upwards from the 5-year minimum sentence. (PT 8). Petitioner also confirmed his understanding that the bargain was on the sentence alone, and not on the charge. (PT 9).

---

[1] The trial judge was referring to a type of guilty plea sanctioned by the Michigan Supreme Court in *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993). In *Cobbs*, the state supreme court held that at the request of a party, the judge could state on the record the length of sentence that appeared to be appropriate for the charged offense on the basis of information then available. If, at the time of sentencing, the court determines that the sentence must exceed the preliminary evaluation, the defendant has "an absolute right to withdraw the plea." 505 N.W.2d at 212.

The court then continued the colloquy, informing petitioner that the court would appoint an attorney for him if he could not afford to continue with his retained counsel. (PT 9). The court explained the presumption of innocence and the prosecutor's burden of proof, and related those concepts to the anticipated testimony of Stevenson and the confidential informant. (PT 10-11). The court explained to petitioner that the decision for the jury would be whether petitioner was involved in Stevenson's drug-dealing but that it was the duty of the prosecution to prove petitioner's guilt. (PT 11). The court then went on to explain to petitioner his trial and appellate rights. (PT 11-13).

The court then inquired concerning the voluntariness of the plea. When asked whether the plea was the result of any threat, defendant answered, "No, I'm just between a rock and a hard place, as this lady [petitioner's counsel] said." (PT 13-14). Petitioner then volunteered, "If I don't, it's gonna be worse on me so I gotta take the lesser of the evil." (PT 14). The court then returned to the question whether anyone had threatened petitioner to get him to plead, and petitioner answered, "No, sir." (PT 14). Petitioner also affirmed that it was his "own choice" to plead. (*Id.*). The court then questioned petitioner to establish a factual basis for the plea, establishing that petitioner knew that Stevenson had cocaine and that "he was gonna make a transaction," but that he apparently did not know the amount. (PT 15-16). Upon questioning by the assistant prosecutor, petitioner admitted that he assisted Stevenson with his intent to deliver. (PT 16). Petitioner also admitted that he had a small amount of marijuana in his possession. (*Id.*).

The court found that the plea was understanding, voluntary and accurate and accepted the plea. (PT 17). At the end of the proceeding, the judge wished petitioner good luck and told him that he would do his best to "see if we can keep the *Cobbs*," referring to the binding agreement for a sentence below the mandatory minimum. (PT 18).

On January 14, 2004 (two and one-half months after the entry of a guilty plea), petitioner's counsel filed a motion to withdraw the plea. (docket # 1, Ex. B). The motion recited that petitioner had met with counsel on numerous times before the trial and was advised of his rights, both by counsel and by the court at the time of the plea. It further recited that petitioner "knowingly and voluntarily waived his rights to trial and pled guilty to violating the controlled substances statute." The motion stated, however, that petitioner wished to withdraw his plea "because he believes he is innocent and it would be wrong for him to plead to a crime he did not commit."

The parties appeared before Judge Schnelz on February 4, 2004, for a hearing on the motion to withdraw the plea and for sentencing. (*See* Sentencing Transcript (ST), docket # 17). At the outset of the proceeding, the court indicated its willingness to sentence petitioner to a term of 51 months, at the low end of the advisory guidelines, rather than the 60-month sentence contemplated at the plea hearing. (ST 3). Defense counsel then proceeded to argue the motion to withdraw petitioner's plea, but the court interrupted her, with the comment that that would not be a good idea unless petitioner could tell the judge something that he didn't already know. (ST 4). The assistant prosecutor objected on the basis of prejudice, stating that the co-defendant Stevenson had been flown in from federal prison in Missouri on the day of trial and that the prosecution had been ready to proceed when petitioner pled guilty. (ST 4-5). The court remarked to petitioner that he faced a substantially longer sentence if he were convicted at trial. Petitioner indicated that he understood, but that he needed "adequate representation." (ST 5). The judge reiterated that he was giving petitioner the benefit of a sentence even lower than that contemplated at the time of the plea, but petitioner responded that he preferred to go to trial. (ST 5-6). The court refused to hear any further argument. The court noted that petitioner had two prior felony convictions, which would have

exposed him to a 40-year sentence had the prosecutor charged him as an habitual offender. (ST 7). Petitioner then stated that he was "caught in a situation" and that he had only had ten minutes to make a decision about the plea. The court observed that petitioner had been arraigned on the charge months before that and that there was discussion of a *Cobbs* plea at the first arraignment. (ST 8). The court then imposed a sentence of 51-months-to-20-years. (ST 10).

        The court appointed new counsel to represent petitioner for post-conviction and appellate purposes. On January 31, 2005, counsel filed a post-trial motion to withdraw the guilty plea. The motion argued that the trial court erred in refusing to allow petitioner to withdraw his plea and that trial counsel had provided ineffective assistance. (*See* Motion, attached to Petition, docket # 1). In support of the challenge to counsel's assistance, new counsel argued that Ms. Williams-White was not "looking out for his best interests" because she had not been fully paid. Neither the motion nor the attached affidavit, attempted to explain how the alleged payment dispute affected counsel's representation. The motion also asserted that petitioner had a viable defense, in that the confidential informant had never seen petitioner before, even though it was well known that Stevenson's supplier generally accompanied him to drug transactions. The motion also asserted that Stevenson would have no credibility. The motion further presented an unsigned letter, purportedly from Stevenson, sent to petitioner's cousin, which stated that Stevenson was "sorry for putting Kenny in it." The motion contended that this was exculpatory and indicated that Stevenson had not been telling the truth about petitioner's role in the offense.

        The court conducted a hearing on the motion on February 16, 2005. (*See* Motion Transcript (MT), docket # 18). At the hearing, the court entertained no argument, but made findings on the basis of the record in the case. The court stated that he thought that petitioner was counting

on the prosecution's inability to produce Stevenson on the day of trial and that when he found out that Stevenson was present, "that's when he decided it might be in his best interest to develop a *Cobbs* plea." (MT 4). The court noted petitioner's assertion that he had a viable defense, but stated that the facts supporting guilt had been developed at the preliminary examination. (MT 5). The court also noted that Stevenson's comment that he was sorry for putting "Kenny in it" could be inculpatory rather than exculpatory. (*Id.*). At the end of his findings, the judge decided that there was not enough to show any reason why the plea should be withdrawn. (MT 6).

Petitioner, represented by appointed counsel, filed a delayed application for leave to appeal to the Michigan Court of Appeals. The application raised the same issues as had been presented to the court in the post-trial motion to withdraw the plea. By standard order entered May 20, 2005, the Michigan Court of Appeals denied the application for lack of merit in the grounds presented. (docket # 18). Petitioner filed a *pro se* application for leave to appeal to the state Supreme Court. The application repeated the ground that had been presented to the state Court of Appeals, but added the allegation that the judge coerced a plea of guilty with "his persistent and coercive atmosphere obtaining through persuasion a guilty plea." By standard order entered October 31, 2005, the state Supreme Court denied the application. (docket # 20). This habeas corpus action was instituted on February 16, 2006, alleging the same ground for relief raised in the state Court of Appeals.

**Applicable Standard**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"),

the provisions of that law govern the scope of the Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). If a state court adjudicated the claim, AEDPA standards must be applied. 28 U.S.C. § 2254(d). *De novo* review applies, however, where the state court did not address the merits of a claim. In that limited set of circumstances, "there are simply no results, let alone reasoning, to which [the habeas] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see Williams v. Haviland*, 467 F.3d 527, 530 (6th Cir. 2006). In the present case, *de novo* review applies, as the state appellate courts declined to grant leave to appeal.

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006); *Bailey*, 271 F.3d at 655. The AEDPA standard includes an important temporal limitation. "'[C]learly established Federal law as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the

relevant state-court decision.'" *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003) (quoting *Williams*, 529 U.S. at 412). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 317-18 (6th Cir. 2001); *see Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) ("As a threshold matter [ ] we first decide what constitutes 'clearly established law,' as determined by the Supreme Court of the United States."); *Spisak v. Mitchell*, 465 F.3d 684, 690 (6th Cir. 2006); *Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004) (describing the issue of whether the law was clearly established by Supreme Court precedent as a "threshold inquiry").

**Discussion**

Read with the required liberality, the habeas corpus petition appears to raise two grounds for relief. First, petitioner asserts that the trial court erred in not granting him permission to withdraw his plea, as the request was appropriate under Michigan Court Rule 6.310. Second, petitioner asserts that the plea was rendered involuntary by the ineffective assistance of counsel.

Petitioner's claim of error under Michigan Court Rule 6.310 does not state a ground for habeas corpus relief. That court rule allowed the trial court "in the interests of justice," to allow a guilty plea to be withdrawn before sentencing. MICH. CT. R. 6.310(B) (1989 version). The decision whether to allow withdrawal of a guilty plea is a matter of trial court discretion. *See People v. Wilhite*, 618 N.W.2d 386, 389 (Mich. Ct. App. 2000). Habeas corpus relief is available, however, only if a petitioner is held in state custody in violation of the federal Constitution or laws. 28 U.S.C. § 2254(a). The federal courts have no power to intervene on the basis of a perceived error of state

law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The state trial court's exercise of discretion under Rule 6.310 frames a pure issue of state law, unreviewable in habeas corpus. The Sixth Circuit has squarely held that a state defendant has no due process right to withdraw an otherwise valid guilty plea. *Carwile v. Smith*, 874 F.2d 382, 385-86 (6th Cir. 1989).

A guilty plea entered in the state courts may be challenged in a habeas corpus proceeding only if the plea violated constitutional standards. The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court plea proceeding. *See Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 506 U.S. 20, 29-30 (1992). In the present case, respondent has provided a transcript of the guilty plea proceeding (docket # 16) which reflects the trial judge's careful colloquy with petitioner, designed to determine the knowing and voluntary nature of the guilty plea. Although petitioner certainly expressed his discomfort arising from the serious penalties he faced, and his recognition that he was choosing the lesser of two evils (PT 14), these pressures are an inherent part of most serious felony prosecutions. The Supreme Court has categorically rejected the notion that a guilty plea is rendered involuntary by the sense of pressure felt by a criminal defendant "to accept the certainty or

probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady v. United States*, 397 U.S. 742, 751 (1970). This pressure is "inherent in the criminal law." *Id.* at 751. Although he had ample opportunity to do so, petitioner never told the trial judge that his plea was the result of coercion or undue influence or that it was motivated by anything other than the exercise of his free will. In fact, he testified under oath to the contrary. In such circumstances, the trial court's finding that the plea was voluntary and intelligent is well supported and is entitled to a presumption of correctness. *Garcia*, 991 F.2d at 326.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court confirmed that where a defendant enters a guilty plea upon counsel's advice, the voluntariness of the plea depends on whether the advice was within the range of competence demanded of attorneys in criminal cases. 474 U.S. at 56. Under *Hill*, the two-part standard for evaluating claims of ineffective assistance of counsel, first established by the Court in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims that a defendant's plea of guilty was induced by ineffective assistance of counsel. Under this two-part test, the criminal defendant must first show that counsel's representation fell below an objective standard of reasonableness. *Hill*, 474 U.S. at 57 (citing *Strickland*, 466 U.S. at 687-88). Second, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 474 U.S. at 57. In order to satisfy this prejudice requirement in the context of a guilty plea, the criminal defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 59.

Petitioner asserts in this court, as he did in the state courts, that Attorney Jeanette Williams-White rendered ineffective assistance at the time of the guilty plea. A habeas petitioner advancing such a claim bears the burden of overcoming the "strong presumption" that counsel's performance fell within the "wide-range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In adjudicating the first prong of the *Strickland* standard, the court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* at 690. Petitioner has utterly failed to allege facts that might lead a reviewing court to the conclusion that his counsel's performance fell below an objective standard of reasonableness. To overturn a guilty plea on the basis of ineffective assistance of counsel, a habeas petitioner must establish that he was induced to plead guilty because of serious misadvice by counsel, such as gross misadvice concerning parole eligibility, *see Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988), or misstatements by counsel as to the maximum sentence that could be imposed after a trial, *see Pitts v. United States*, 763 F.2d 197, 200-01 (6th Cir. 1985).

Petitioner does not point to any specific act or omission of his counsel, nor does he allege that counsel rendered wrong or incomplete advice concerning the nature of the charge, the penalties that petitioner faced, or his right to a trial. Rather, petitioner repeats the argument, first advanced by his post-conviction attorney in the state courts, that he was involved in a "fee dispute" with counsel at the time of the guilty plea. In the state Court of Appeals, petitioner faulted his trial counsel for not mentioning to the trial judge that "there were problems because Mr. Mingo was behind in paying his fees." (Application for Leave to Appeal at 5, found in appellate record, docket # 19). Petitioner also asserted that there was "a breakdown in the client-attorney relationship because of the pay dispute." (*Id.*). Beyond this vague allegation, petitioner does not provide this

court, and he did not provide the state courts, with any specific allegation of attorney error sufficient to meet the first *Strickland* standard. To the contrary, when petitioner testified before the trial judge under oath during the plea hearing, he affirmed his satisfaction with counsel's representation and even volunteered that she was "the best" that he had seen. Nor did petitioner inform the court of any problem with counsel or ask for the appointment of counsel so that he could proceed to trial. Petitioner is bound by his testimony in the trial court concerning his satisfaction with counsel's services. *See Ramos v. Rogers*, 170 F.3d 560, 565-66 (6th Cir. 1999); *United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993); *Baker v. United States*, 781 F.2d 85, 89 (6th Cir. 1986). The alleged fee dispute was certainly known to petitioner at the time he entered his plea, and it was incumbent upon him to raise the issue in response to the court's direct questions. Petitioner's silence during the plea hearing concerning any alleged problem with his counsel stands as a formidable barrier to his present claim that a "fee dispute" somehow led counsel to render ineffective assistance at the time of the guilty plea. Certainly, the mere fact of a fee dispute is insufficient to invalidate a guilty plea.

Petitioner also asserted in the state courts that counsel was ineffective for allowing him to plead guilty because petitioner had "a viable defense." (Application at 5). In support of this argument, appellate counsel relied on the transcript of the preliminary examination, which occurred almost eighteen months before the guilty plea. Counsel argued that Stevenson's testimony would have been incredible and that petitioner's innocence was shown by the confidential informant's unfamiliarity with him, in light of the fact that Stevenson was often accompanied by his "supplier" in previous drug transactions. These very points, of course, were raised by the cross-examination of Ms. Williams-White at the preliminary examination itself. They hardly establish a "viable

defense." Appellate counsel was merely arguing that there were reasons for the jury to reject the testimony of the prosecution's witnesses, a statement that can be made in virtually every criminal case. Petitioner does not allege that counsel misadvised him concerning the strength of the prosecution's case or the possibility of a conviction. Certainly, the Supreme Court has never held that an attorney is ineffective for advising in favor of a guilty plea if there is a "viable defense" to the charge. Otherwise, counsel would be required to insist on trial whenever there is any possibility that the jury might acquit the defendant.

In summary, petitioner's challenge to the voluntariness of his guilty plea on the basis of ineffective assistance of counsel falters on the first prong of the *Strickland* standard: petitioner has not alleged any act or omission by his trial counsel that fell below an objective standard of reasonableness. Furthermore, as noted by the state trial judge, the result obtained by defense counsel was very favorable to defendant. Counsel requested a binding sentencing cap under the *Cobbs* decision. The trial court agreed and tentatively committed itself to departing downwards from the mandatory minimum of 10 years. Ultimately, the court imposed an even lower sentence, 51 months. Had petitioner insisted on a trial, a conviction would have exposed him to a maximum 40-year sentence, because of his status as an habitual offender. Petitioner recognized the benefit of the plea agreement, which he characterized a the lesser of two evils. Nothing in the record establishes that petitioner's choice to plead guilty was anything but a free and voluntary one, based on adequate advice of counsel and an understanding, expressed on the record, of his option to proceed to trial that very same day.

Where, as here, the state appellate courts have not evaluated the merits of a petitioner's federal claim, the deferential standard of review required by AEDPA does not apply.

*See McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). AEDPA by its own terms is applicable only to habeas claims that were adjudicated on the merits in state court. In the absence of an express adjudication, the court reviews questions of mixed law and fact, such as Sixth Amendment claims of ineffective assistance of counsel, *de novo*. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Higgins v. Renico*, 470 F.3d 624, 630-31 (6th Cir. 2006). Without affording any deference to the decisions of the state courts in this matter, I conclude that petitioner has failed to allege, let alone establish, any constitutional basis to question the validity of his guilty plea.

### Recommended Disposition

For the foregoing reasons, I recommend that the petition for habeas corpus relief be denied on its merits.

Dated:  April 10, 2007               /s/  Joseph G. Scoville
                                     United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).